[No. D043166. Fourth Dist., Div. One. Apr. 7, 2004.]

In re LOUIS S., a Person Coming Under the Juvenile Court Law.

SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
CHARISSE A., Defendant and Appellant.

**COUNSEL**

Maryann M. Milcetic, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Christopher Blake, under appointment by the Court of Appeal, for the Minor.

**OPINION**

**McDONALD, J.**—Charisse A. appeals the order from the 12-month review hearing terminating services to her and continuing the court's jurisdiction over her son, Louis S., under Welfare and Institutions Code section 366.21.[1] She raises no substantive objection to the order, but asserts it must be reversed because the San Diego County Health and Human Services Agency (the Agency) did not comply with the notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Because the Agency did not comply with the notice provisions of the ICWA, we reverse the order from the 12-month review hearing and all subsequent orders, remand the matter to the juvenile court and direct the court to ensure that proper notice under the ICWA is given.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2002 the Agency removed eight-year-old Louis from Charisse's custody and filed a section 300 petition on his behalf. The petition alleged Louis was at risk because he tested positive for, and Charisse used, drugs. At the time of the detention hearing, the social worker was unable to inquire of Louis's parents about possible Indian heritage because their whereabouts were unknown. In August the court made a true finding on the petition, declared Louis to be a dependent, removed him from his parents' custody, and ordered reunification services.

In January 2003 Charisse told the social worker that her maternal grandmother, Ramona L., was an Apache Indian. Charisse's mother, Vivian E., told the social worker Ramona was eligible for membership in the Chiricahua Tribe, a branch of the Apache Tribe, but she never registered with any tribe. Presumably in an effort to determine where to send notice to comply with the provisions of the ICWA, the social worker spoke with the enrollment clerk for the San Carlos Apache Tribe, who said the members of the Chiricahua Tribe had blended with their tribe a "long time ago."

The social worker stated in her six-month review hearing report that in January 2003 she sent the ICWA notices to the San Carlos Apache Tribe and to the Bureau of Indian Affairs (BIA). However, she did not file the notices or copies of the notices or any return receipt with the court. The San Carlos Apache Tribe reported Louis was not eligible for enrollment; the BIA did not respond. At the March six-month review hearing, the court found the ICWA did not apply.

At the September 2003 12-month review hearing, the court terminated Charisse's reunification services, but continued services to Louis's father and continued jurisdiction over Louis. Charisse timely filed this appeal. Subsequently, the court terminated reunification services for Louis's father and scheduled a section 366.26 hearing for May 2004.[2] The court again found the ICWA did not apply to this proceeding.

---

[2] On our own motion, we took judicial notice of the court's January 2004 minute order. We recognize the Supreme Court has stated postjudgment evidence may not, except in extraordinary circumstances, be used as a basis to reverse a termination of parental rights on appeal. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414 [2 Cal.Rptr.3d 683, 73 P.3d 541].) Because we consider the material not as a basis to reverse, but to show the events that have occurred during the appeal, taking judicial notice here is not prohibited by *In re Zeth S.*

## DISCUSSION

### I

In her opening brief, Charisse asserts the Agency did not comply with the notice provisions of the ICWA because: (1) it did not file the ICWA notices or copies of the notices with the juvenile court; (2) the ICWA notices it sent were insufficient; (3) it did not serve notice on all known Apache Tribes; and (4) it did not serve notice on the chairperson or the designated service agent for the San Carlos Apache Tribe. We granted the Agency's request to augment the record with the notice it sent to the BIA in January 2003 and the notice it sent to the San Carlos Apache Tribe in January 2004. Charisse argues these notices were deficient because: (1) her name and the names of her mother and grandmother were misspelled; (2) her grandmother's identification information was placed in the space on the form for her father's information; (3) no birthdates were provided for either her mother or grandmother; (4) the notices sent to the BIA were sent to the wrong address; and (5) the notice sent to the San Carlos Apache Tribe in January 2004 did not provide information about Ramona, the person with the alleged Indian heritage.

### A

Congress enacted the ICWA in 1978 to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) It allows a tribe to intervene in state court dependency proceedings (25 U.S.C. § 1911(c)), because the "ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].)

■ "Where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and their right of intervention." (25 U.S.C. § 1912(a).) Notice to the tribe provides it the opportunity to assert its rights. (*In re Karla C.* (2003) 113 Cal.App.4th 166, 174 [6 Cal.Rptr.3d 205].) "Notice shall be sent whenever there is reason to believe the child may be an Indian child, and for every hearing thereafter unless and until it is determined that the child is not an Indian child." (Cal. Rules of Court, rule 1439(f)(5).)[3] No proceeding to place a minor in foster care may occur until 10 days

---

[3] All rule references are to the California Rules of Court.

after the tribe has received notice. (25 U.S.C. § 1912(a).) We may void orders placing a minor in foster care if notice to the tribes or the BIA is not given in accordance with provisions of the ICWA. (25 U.S.C. § 1914.)

B

■ Charisse contends reversal of the order from the 12-month hearing is required because the Agency never filed the notices, copies of the notices or return receipts for notices it sent to the San Carlos Apache Tribe or the BIA, in the trial court. The BIA's Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584 (Nov. 26, 1979)) (the Guidelines), which were designed to implement the ICWA, require that an original or a copy of each ICWA notice must be filed in the juvenile court together with any return receipts. (*In re Karla C., supra,* 113 Cal.App.4th at p. 175.) Although the Guidelines are not binding on state courts, this court has found the Guidelines to be persuasive with regard to the ICWA notice requirements. (*In re Karla C., supra,* at p. 175; *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 255 [126 Cal.Rptr.2d 639].) Following the Guidelines several courts, including this court, have held that the ICWA notice, return receipts, and responses of the BIA and the tribes must be filed in the juvenile court. (*In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1266–1267 [121 Cal.Rptr.2d 820]; *In re H.A.* (2002) 103 Cal.App.4th 1206, 1214–1215 [128 Cal.Rptr.2d 12]; *In re Asia L.* (2003) 107 Cal.App.4th 498, 507–509 [132 Cal.Rptr.2d 733]; *In re Karla C., supra,* at p. 178.)

■ Here, the social worker did not file any notices, copies of notices or return receipts with the juvenile court; she did file the response from the San Carlos Apache Tribe with the court. However, responses to the ICWA notices without the notices are insufficient because it is impossible to determine from the responses alone whether the notices provided the tribe with relevant information and therefore with a meaningful opportunity to evaluate whether the dependent minor is an Indian child within the meaning of the ICWA. (See *In re Karla C., supra,* 113 Cal.App.4th at p. 178.) Because the social worker did not file the notices, or copies of the notices and any return receipts, with the court, it was error for the court to conclude the ICWA did not apply because it had insufficient information to reach that conclusion.

C

The Agency concedes the initial appellate record does not show the ICWA notice requirements were satisfied. However, it urges us to affirm because it contends the error was cured with the notice sent to the BIA in January 2003 and to the San Carlos Apache Tribe in January 2004, which are now part of

the appellate record by augmentation.[4] We may conclude the court's error is harmless if the notices sent by the Agency in January 2003 and January 2004 comply with the ICWA. (*In re C.D.* (2003) 110 Cal.App.4th 214, 224, 226–227 [1 Cal.Rptr.3d 578].)

■ One of the purposes of giving notice to the tribe is to enable it to determine whether the minor is an Indian child. (*In re D.T.* (2003) 113 Cal.App.4th 1449, 1455 [5 Cal.Rptr.3d 893].) Notice is meaningless if no information or insufficient information is presented to the tribe to make that determination. (*Ibid.*) The notice must include the name, birthdate, and birthplace of the Indian child; his or her tribal affiliation; a copy of the dependency petition; the petitioner's name; a statement of the right to the tribe to intervene in the proceeding; and information about the Indian child's biological mother, biological father, maternal and paternal grandparents and great-grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; current and former addresses; tribal enrollment numbers, and/or other identifying information. (*In re Karla C., supra,* 113 Cal.App.4th at p. 175; *In re C.D., supra,* 110 Cal.App.4th at p. 225; 25 C.F.R. § 23.11(a), (d) (2004).) ■ The burden is on the Agency to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the BIA. (*In re C.D., supra,* 110 Cal.App.4th at p. 226.)

■ The State of California Health and Welfare Agency and the Department of Social Services have issued two forms to comply with the ICWA notice requirements. (*In re Jeffrey A.* (2002) 103 Cal.App.4th 1103, 1108 [127 Cal.Rptr.2d 314].) The forms are entitled " 'Request for Confirmation of Child's Status as Indian' (form 'SOC 318') and 'Notice of Involuntary Child Custody Proceedings Involving an Indian Child' (form 'SOC 319')." (*Ibid.*)

---

[4] We have granted the Agency's request to augment the record with the notices sent by the social worker to the BIA on January 29, 2003, and to the San Carlos Apache Tribe on January 8, 2004. We recognize the Supreme Court has stated postjudgment evidence may not, except in extraordinary circumstances, be used as a basis to reverse a termination of parental rights on appeal. (*In re Zeth S., supra,* 31 Cal.4th at pp. 413–414.) However, *Zeth S.* did not bar postjudgment evidence; it stated an appellate court could consider this evidence in extraordinary circumstances. (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 866 [11 Cal.Rptr.3d 1].) In *Alicia B.,* this court held it was appropriate to augment the record with the ICWA notices sent by the Agency because the evidence is not new and denying the motion would be counterproductive to the strong public policy of expeditiously resolving a minor's issues on appeal. (*Ibid.*) Further, if we do not grant the request, the Agency would probably file and serve the same notices, resulting in our reversing the order or judgment at the section 366.26 hearing because of the deficiencies in the notices. Granting Agency's request to augment the record avoids further delay.

The augmented record shows that in January 2003 the social worker sent forms SOC 318 and 319 to the BIA.[5] The forms contained multiple errors. Charisse's first name and Vivian's last name are misspelled on form SOC 319. Vivian's birthdate is missing from form SOC 318, although the information was available because the children are in foster care with her. The social worker wrote Ramona's name in the location on form SOC 318 for information about the maternal grandfather and did not include Ramona's full name or birthdate. There is no evidence the social worker was unable to obtain Ramona's birthdate, and she was aware of Ramona's full name because she used it in her report. This information is critically important because Ramona is the person with the alleged Indian heritage.

Because the notices contained misspelled and incomplete names, provided information about Ramona in the wrong part of the form, and did not provide birthdates for Vivian or Ramona, the tribe could not conduct a meaningful search to determine Louis's tribal heritage. (See, e.g., *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 705 [127 Cal.Rptr.2d 54].) These errors also demonstrate the importance of filing the notices with the trial court. Had the notices been filed with the court, it could have corrected the errors in a timely fashion.

The errors were not cured by the Agency's January 2004 notice. The Agency must provide all known information to the tribe, particularly that of the person with the alleged Indian heritage. (*In re C.D., supra,* 110 Cal.App.4th at p. 225.) The January 2004 notice consisted of only form SOC 319. It contains no information about Ramona, and Charisse's first name and Vivian's last name are misspelled. The notice is meaningless because the tribe could not adequately search its records for the relevant person. (*In re D.T., supra,* 113 Cal.App.4th at p. 1455.) The court's error of finding the ICWA did not apply has not been cured by the information contained in the Agency's augmentation of the record.

## D

Although the deficiencies in the notice provided by the Agency compel reversal of the order from the 12-month hearing and subsequent orders, we address Charisse's other asserted errors to guide the Agency on remand.

---

[5] Although the notice sent to the San Carlos Apache Tribe in January 2003 is not included in the augment request, we presume the notice was sent because the tribe responded. For purposes of this appeal, we assume the notice sent to the tribe was the same notice the social worker sent to the BIA.

## 1

██ Charisse asserts the notice sent to the BIA was insufficient because it was sent to the wrong address. For dependency proceedings in California, notice is sent to the BIA's regional office in Sacramento. (25 C.F.R. § 23.11(c)(12) (2004).) The social worker sent the notice to 2800 Cottage Way, Sacramento California, 95825, which is the current address for that office of the BIA. (*Ibid.*; U.S. Off. of Fed. Reg., U.S. Government Manual (2003–2004 ed.) p. 257.) The notice was sent to the proper address.[6]

## 2

██ Charisse asserts the Agency should have sent notice to the eight recognized Apache Tribes, not solely to the San Carlos Apache Tribe. The Agency must provide notice to all tribes of which the child may be a member or eligible for membership. (Rule 1439(f)(3); *In re Edward H.* (2002) 100 Cal.App.4th 1, 4 [122 Cal.Rptr.2d 242].) If the identity of the tribe cannot be determined, notice is to be served on the BIA. (25 U.S.C. § 1912(a); rule 1439(f)(4).)

There are eight recognized Apache Tribes, but the Chiricahua Tribe is not one of them. (68 Fed.Reg. 68180 (Dec. 5, 2003).) The social worker contacted the San Carlos Apache Tribe, presumably to determine the affiliation of members of the Chiricahua Tribe. She learned members of the Chiricahua Tribe had blended with the San Carlos Apache Tribe. If all members of the Chiricahua tribe had merged with the San Carlos Apache Tribe, notice solely to that tribe is sufficient. (25 U.S.C. § 1912(a); rule 1439(f)(3).) However, the social worker did not represent that the San Carlos Apache Tribe absorbed all members of the Chiricahua Tribe. Further, the San Carlos Apache Tribe is located in Arizona, as are the Tonto and White Mountain Apache Tribes. (68 Fed.Reg. 68180 (Dec. 5, 2003).) Minor's counsel represents the three tribes live in close proximity. We have no reason to doubt that representation. If it is true, the social worker should have determined whether any members of the Chiricahua Tribe were absorbed into either the Tonto or the White Mountain Apache Tribes or confirmed the San Carlos Apache Tribe absorbed all members of the Chiricahua Tribe. Once the social worker learns which tribe or tribes absorbed the Chiricahua, she need notice only those tribes. (25 U.S.C.

---

[6] Charisse argues that the notice was not properly served on the BIA because the Agency never filed the return receipt card. When neither the notices nor the return receipt cards are filed with the court, there is insufficient evidence the parties received actual notice. (*In re Suzanna L.* (2002) 104 Cal.App.4th 223, 232 [127 Cal.Rptr.2d 860].) However, the notice could have been properly served to the correct address, but the return receipt card not returned, or lost in the mail. We question, but need not resolve, whether this error alone would require reversal, but urge the Agency to file the return receipt cards if they are in its possession.

§ 1912(a); rule 1439(f)(3).) If the social worker cannot determine which tribes absorbed the Chiricahua, she should give notice to the BIA and the tribes she knows absorbed members of the Chiricahua Tribe. (25 U.S.C. § 1912(a); *In re Edward H., supra,* 100 Cal.App.4th at p. 4.) Serving the BIA eliminates the need to serve the remaining Apache Tribes. (25 U.S.C. § 1912(a); rule 1439(f)(4).)

3

█ Charisse argues reversal is warranted because the Agency did not serve notice on the chairperson or the designated service agent of the San Carlos Apache Tribe. Notice should be sent to the tribe's chairperson unless the tribe designates another agent for service of process. (Rule 1439(f)(2); *In re H.A., supra,* 103 Cal.App.4th at p. 1213.) The BIA publishes a list of designated tribal agents for service of notice under the ICWA. (See, e.g., 68 Fed.Reg. 68408 (Dec. 8, 2003).) The list in effect in January 2003 showed Terry Ross was the designated agent for the San Carlos Apache Tribe.[7] (66 Fed.Reg. 65725 (Dec. 20, 2001).)

The Agency argues the notice was sent to the chairperson because the response contained the chairperson's name. Although the response was on San Carlos Apache Tribe stationary, the fact the chairperson's name is on the stationary does not mean the notice was properly addressed to the chairperson. Moreover, because the January 2004 notice was not addressed to anyone, it seems likely the January 2003 notice was also insufficiently addressed.

Regardless, our record, even as augmented, does not show the intended recipient of the January 2003 notice sent to the San Carlos Apache Tribe. Charisse assumes the notice was not sent to Terry Ross because Ed Hopkins and Verna Talkalai wrote the replies for the tribe. However, the fact the designated agent did not write the replies does not mean the notices were improperly addressed. Ross may have given the notice to Ms. Talkalai because she is the enrollment clerk for the tribe. Even though not serving the appropriate tribal entity may constitute reversible error (*In re H.A., supra,* 103 Cal.App.4th at p. 1213), we need not decide whether it does so here. However, on remand we urge the Agency to ensure the notices are sent to the designated agents of the tribe or tribes.

---

[7] The list of registered agents was updated in December 2003, and Terry Ross remained the designated agent for the San Carlos Apache Tribe. (68 Fed.Reg. 68408 (Dec. 8, 2003).)

II

Having concluded error occurred and this matter must be remanded to the juvenile court, we examine the orders affected by the error.[8] Charisse appealed the order entered at the 12-month review hearing, which we reverse because of noncompliance with the notice requirements of ICWA. (See 25 U.S.C. § 1914.) However, since that time, the 18-month review hearing has occurred, at which the court scheduled the section 366.26 hearing for May 2004. Because we reverse the order from the 12-month review hearing, all subsequent orders, including the order from the 18-month review hearing, are also reversed.[9] (See *In re Desiree F.*, *supra*, 83 Cal.App.4th at pp. 475–478.)

We find it increasing incredible that the Agency seems incapable of complying with the ICWA in a significant number of cases recently before this court. The conduct of the Agency in this case has caused the unnecessary expenditure of time and effort by the trial court, county counsel, parents' counsel, minor's counsel and this court, and more importantly has delayed final resolution of Louis's future. Unfortunately, the sole remedy available to this court is to continue reversing orders in juvenile dependency cases in which there has been inadequate compliance with the ICWA by the Agency.

## DISPOSITION

The order made at the 12-month review hearing and all subsequent orders are reversed. The court is directed to ensure that proper notice is given under the ICWA. If, after receiving notice, no tribe intervenes, the juvenile court shall reinstate the orders. (See *Dwayne P. v. Superior Court*, *supra*, 103 Cal.App.4th at p. 261.)

Nares, Acting P. J., and Haller, J., concurred.

---

[8] Charisse acknowledges *In re Amirah H.* (Nov. 24, 2003, B166658), the case she cited for the proposition that if Louis is found to be an Indian child all orders in the dependency proceeding except for the order from the detention hearing must be reversed, was depublished after she filed her briefs in this matter.

[9] The permanency planning hearing should not occur until the Agency properly serves notice on the tribe or tribes and the BIA. (25 U.S.C. § 1912(a).)