Submitted on record and brief December 1, 2000, affirmed August 29, 2001

In the Matter of the Adoption of
Theodore Charles Anderson,
nka Theodore Charles Hofmann,
a Minor Child.

Terrence L. HOFMANN;
and Deborah L. Hofmann,
*Respondents,*

*v.*

Alan Maxwell ANDERSON,
*Appellant.*

40-98-04978; A106561

31 P3d 510

James A. Palmer filed the brief for appellant.

No appearance for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Father appeals from a judgment that granted stepfather's petition for adoption. He assigns error to the trial court's failure to apply the requirements of the Indian Child Welfare Act (ICWA), 25 USC § 1901 *et seq.*, to this proceeding. We affirm.

Father is currently incarcerated on a conviction for sexual abuse in the first degree, ORS 163.427. At the time of the adoption proceeding, he had been incarcerated in state prison for just over three years. Child was five years old at the time of the hearing. He had lived with stepfather for three years. Stepfather and mother both testified that child had a good relationship with stepfather, and stepfather said that he loved child very much. Father had seen child only once since father was first detained on the sexual abuse charge in 1995. The record suggests that father's lack of contact with child was due to transportation problems rather than an absence of affection or interest. Father had sent child birthday and Christmas cards and had written letters to mother in an attempt to arrange visits with child.

Although both parents testified to having some degree of Indian heritage, nothing in the record suggests that either mother or father was a member of any federally recognized Indian tribe. Mother testified, based on information provided by her own mother, that she believed herself to be one-quarter Blackfoot. However, her Blackfoot heritage was from her maternal grandfather and neither she nor her mother could remember his name. Moreover, mother was not and never has been an enrolled member of the Blackfoot Tribe, nor did she know whether she was eligible for membership. Father testified that his own father was "at least a quarter of either Crow or Blackfoot and then some of the other. I can't remember how much." Father's mother had been adopted as a small child and knew nothing about the genetic makeup of her biological parents. Father himself was not a member of either the Crow or Blackfoot tribe and did not know whether his father had been a member of either tribe. Moreover, he did not know whether he himself was eligible for membership.

ORS 109.322 allows a court to grant a petition for adoption when the adoption will serve the child's best interests and the nonconsenting parent is serving a term of incarceration of at least three years and has actually served three years. The parties do not dispute that the requirements of ORS 109.322 were met in this case. However, father contends that the adoption petition should be denied because mother and stepfather were required to demonstrate compliance with the ICWA and failed to do so. Because we conclude that father had the burden to produce sufficient evidence as to the applicability of the ICWA and that he did not produce the necessary evidence, we affirm.

Father is correct that, when an Indian child is involved in a court proceeding for termination of parental rights, ICWA imposes heightened requirements on the party petitioning for termination.[1] *See, e.g.*, 25 USC § 1912.[2] However, father fails to recognize that those requirements do not

---

[1] Father attempts to buttress his federal argument by pointing to a state statute that cites to the ICWA. The statute that he refers to, ORS 109.310(6), was repealed in 1993. Or Laws 1993, ch 717, § 1. However, ORS 109.309 was enacted in its place. Or Laws 1993, ch 717, § 2. ORS 109.309(10) provides that "[t]he adoption shall comply with [the ICWA], *if applicable*." (Emphasis added.) Because we conclude that the ICWA does not apply to this case, ORS 109.309(10) adds nothing to our analysis.

[2] 25 USC § 1912 provides, in pertinent part:

"(a) In any involuntary proceeding in a State court, *where the court knows or has reason to know that an Indian child is involved,* the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. * * * No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

"(b) In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding. * * *

"(c) Each party to a foster care placement or termination of parental rights proceeding under State law involving an Indian child shall have the right to examine all reports or other documents filed with the court upon which any decision with respect to such action may be based.

"(d) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

come into play until the court makes a threshold determination that an Indian child is involved in the case.[3] As the party asserting the applicability of ICWA, father had the burden to produce sufficient evidence to support a determination that child was an Indian child. *Matter of Baby Boy Doe,* 849 P2d 925, 931 (Idaho), *cert den* 510 US 860, 114 S Ct 173, 126 L Ed 2d 133 (1993); *In the Interest of A.G.-G.,* 899 P2d 319, 322 (Colo App 1995); *see also Quinn v. Walters,* 320 Or 233, 242-43, 881 P2d 795 (1994).

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 USC § 1903(4). Because father made no claim that child was a member of any tribe, 25 USC § 1903(4)(a), he was required to produce evidence sufficient to show both that child was eligible for membership in a federally recognized tribe *and* that child was the biological child of a tribal member, 25 USC § 1903(4)(b). *See also Angus v. Joseph,* 60 Or App 546, 549, 655 P2d 208 (1982), *rev den* 294 Or 569, *cert den* 464 US 830, 104 S Ct 107, 78 L Ed 2d 109 (1983). Although one could argue whether there is evidence in the record as to the first issue, there is a total lack of evidence as to the second. In fact, both parents testified that they were not tribal members. In light of that gap in the evidence, the trial court did not have a basis on which to conclude that ICWA applied, and it was entitled to proceed with the adoption under state law. *See, e.g., State ex rel SOSCF v. Klamath Tribe,* 170 Or App 106, 11 P3d 701 (2000). Father

---

"* * * * *

"(e) No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

(Emphasis added.)

[3] We accept for purposes of this case the parties' implicit assumption that ICWA applies to intra-family disputes in which one parent seeks to have the parental rights of the other terminated. *See State, In Interest of D.A.C.,* 933 P2d 993, 1000-01 (Utah App 1997) (concluding that ICWA applies in such circumstances and discussing the holdings of other state courts on the issue). However, we do not decide whether the assumption is correct.

makes no argument that the termination did not comport with state law, and, accordingly, we affirm.

Affirmed.