2008 ND 128

**In the Matter of the ADOPTION OF C.D.**

**K.D., Petitioner and Appellant**

v.

**M.L., Respondent and Appellee**

and

**Oglala Sioux Tribe, Intervenor and Appellee.**

No. 20070171.

Supreme Court of North Dakota.

June 26, 2008.

Paul R. Sanderson, Zuger, Kirmis & Smith, Bismarck, N.D., for petitioner and appellant.

Bradley D. Peterson (appeared), Bismarck, N.D., for respondent and appellee.

B.J. Jones, Grand Forks, N.D., for intervenor and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] K.D. ("Karen") appealed from a district court judgment dismissing her petition to terminate the parental rights of M.L. ("Mary"). We reverse and remand, concluding the district court erred in determining that the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901–1963, applied in this case.

I

[¶ 2] Mary and E.D. ("Edward") are the biological parents of C.D. ("Chad"), who was born in 1993. Karen is married to Edward and is Chad's stepmother. Although Chad initially resided with Mary after his birth, he was removed from her custody upon a petition by Morton County Social Services in 1996. Edward was awarded full legal and physical custody in 1997, and Chad has lived with Edward and Karen since that time.

[¶ 3] Mary's father was a full-blood Native American and was an enrolled member of the Oglala Sioux Tribe ("Tribe"). Mary is one-half Oglala Sioux blood and Chad is one-quarter Oglala Sioux blood.

Mary has never been an enrolled member of the Tribe, but had filed an application for enrollment which was pending at the time of the hearing in this case.

[¶ 4] In May 2004, Karen filed petitions to adopt Chad and to terminate Mary's parental rights. Mary moved to dismiss the petitions, alleging Chad was an Indian child and Karen had failed to comply with the notice requirements of ICWA. Following a hearing, at which Karen argued that ICWA did not apply, the district court continued the matter and directed Karen's counsel to provide notice of the proceedings to the Tribe. Karen provided notice to the Tribe, and the Tribe served motions to intervene and to transfer jurisdiction to the Oglala Sioux Tribal Juvenile Court and dismiss the state case. The district court granted the Tribe's motion to intervene, but denied its motion to transfer jurisdiction and dismiss the case.

[¶ 5] An evidentiary hearing was held on Karen's petitions on March 20, 2007. At the conclusion of Karen's case-in-chief Mary moved for judgment as a matter of law, arguing Karen had failed to meet the heightened evidentiary standards required under ICWA to terminate her parental rights. Karen again argued ICWA did not apply because there was no evidence establishing Chad was an "Indian child" as defined by ICWA. The court concluded that ICWA applied and that Karen had failed to meet ICWA's heightened burden of proof. The court accordingly dismissed the petition to terminate Mary's parental rights and found it unnecessary to consider Karen's petition to adopt Chad. Karen appealed.

II

■ [¶ 6] ICWA was enacted, in part, to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." 25 U.S.C. § 1902. Thus, when termination of parental rights to an Indian child is sought, the party seeking termination must satisfy the requirements of both the state statutory scheme and the more stringent requirements of ICWA.

■ [¶ 7] We have summarized the dual burdens placed upon petitioners seeking termination of parental rights to an Indian child:

Those state and federal provisions create a dual burden of proof for a party seeking to terminate the parental rights of a parent of an Indian child. "Under N.D.C.C. § 27–20–44(1)(b)(1) the juvenile court may terminate parental rights if a child is deprived, the conditions and causes of the deprivation are likely to continue, and the child is suffering, or will in the future probably suffer serious physical, mental, moral, or emotional harm." *In re D.Q.,* 2002 ND 188, ¶ 19, 653 N.W.2d 713. A party seeking termination of parental rights must prove all the necessary elements by clear and convincing evidence. Under 25 U.S.C. § 1912(d), a petitioner must demonstrate, "by clear and convincing evidence that active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and those efforts were unsuccessful." *In re M.S.,* [2001 ND 68, ¶ 18, 624 N.W.2d 678]. Under 25 U.S.C. § 1912(f), a petitioner must prove continued custody of a child by a parent or Indian custodian is likely to result in serious emotional or physical damage to the child by proof beyond a reasonable doubt.

*In re J.P.,* 2004 ND 25, ¶ 7, 674 N.W.2d 273 (citations omitted). Thus, the elements of state law must be proven by clear

and convincing evidence, but ICWA's requirement that continued custody of the child would likely result in serious emotional or physical damage to the child must be satisfied with proof beyond a reasonable doubt. *In re T.F.*, 2004 ND 126, ¶ 7, 681 N.W.2d 786; *In re M.S.*, 2001 ND 68, ¶ 4, 624 N.W.2d 678.

[¶ 8] The district court in this case concluded that ICWA applied and that Karen had failed to meet ICWA's higher burden of proof. Karen does not challenge the court's determination that she did not meet the requirements for termination under ICWA, but on appeal argues only that ICWA does not apply in this action because Chad is not an "Indian child" as defined by ICWA.

[¶ 9] ICWA's heightened standards for termination of parental rights apply only if an Indian child, as defined in the Act, is involved, and the district court must make a threshold determination that an Indian child is involved in the case. *See, e.g.*, 25 U.S.C. § 1912; *In re A.G.-G.*, 899 P.2d 319, 321 (Colo.Ct.App.1995); *In re A.W.*, 741 N.W.2d 793, 807 (Iowa 2007); *In re Anderson*, 176 Or.App. 311, 31 P.3d 510, 512 (2001). "Indian child" is defined in 25 U.S.C. § 1903(4):

> "Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.

[¶ 10] The parties agree that Chad is not a member of the Tribe, and subsection (a) of the statute does not apply. Mary and the Tribe allege Chad is an Indian child under 25 U.S.C. § 1903(4)(b) because Chad is eligible for membership in the Tribe and Mary, his biological mother, is a member. Karen argues that Mary and the Tribe failed to present any evidence that Mary was a member of the Tribe or that

Chad was eligible for membership, and therefore Chad is not an Indian child under 25 U.S.C. § 1903(4)(b) and ICWA does not apply.

## III

[¶ 11] Before we consider the issue Karen raises on appeal, we address the Tribe's assertion that Karen waived any challenge to the applicability of ICWA when she failed to timely object to the Tribe's motion to intervene in the district court.

[¶ 12] Resolution of this issue requires an explanation of the somewhat convoluted proceedings in this case. Karen filed her petitions for termination of Mary's parental rights and for Chad's adoption in May 2004. At a July 8, 2004, hearing on the petitions, the court continued the matter and appointed counsel for Mary. In October 2004, Mary moved to dismiss the petitions because Karen had failed to comply with the notice requirements under ICWA. *See* 25 U.S.C. § 1912(a). Karen opposed the motion, arguing ICWA did not apply because Chad was not an Indian child under the Act. A second hearing on the petitions was held on November 15, 2004, and the court again continued the hearing and directed Karen's attorney to serve notice of the proceedings upon the Tribe and to schedule another hearing. On November 24, 2004, Karen's counsel served notice upon the Tribe and Mary, advising that a hearing on the petitions would be held on January 4, 2005.

[¶ 13] The Tribe did not file any written response to the notice prior to the January 4, 2005, hearing, and no representative of the Tribe appeared at the hearing. Mary's counsel indicated at the hearing that he had contacted the Tribe the previous day and the Tribe had faxed to him copies of a motion to intervene and a motion to transfer jurisdiction to the Ogla-

la Sioux Tribal Juvenile Court. Although dated December 16, 2004, the documents had not been filed with the court or served upon Karen. Karen argued the Tribe should not be allowed to intervene because ICWA did not apply and because the Tribe had failed to timely move to intervene. Over Karen's counsel's objection, the court again continued the matter and allowed the Tribe five days to file the original documents with the court. The court, however, further held that it was granting the Tribe's motion to intervene and would delay ruling on the motion to transfer jurisdiction. The Tribe finally filed its motions with the court on January 11, 2005. Karen filed a brief objecting to the Tribe's motion to transfer jurisdiction, but did not file a written response to the motion to intervene, which the court had already granted.

[¶ 14] The Tribe contends that Karen's failure to file a separate written objection to the motion to intervene after the Tribe properly filed the motion constitutes a waiver of her objection to application of ICWA in this case. The record indicates, however, that Karen raised these specific challenges to ICWA's applicability at the January 4, 2005, hearing when the court considered and ruled upon the Tribe's unfiled motion. Karen has consistently throughout these proceedings, up to and including the final evidentiary hearing, argued that Chad is not an Indian child and ICWA does not apply. We conclude Karen adequately objected to the Tribe's motion and did not waive her right to contest ICWA's applicability.

[¶ 15] Because we conclude Karen adequately objected to the Tribe's motion, we need not address the separate issue whether a party's failure to object to a Tribe's motion to intervene may constitute a waiver of the right to challenge ICWA's applicability. We note, however, that an order allowing intervention is not final or appealable, and does not finally determine the rights or claims of any party. *In re A.B.*, 2005 ND 216, ¶ 6, 707 N.W.2d 75. Accordingly, an order allowing intervention may be reconsidered at any time, and all parties retain the right to appeal upon entry of a final judgment or order. *Id.*

IV

[¶ 16] The Tribe contends that it has conclusively established Chad is an Indian child and ICWA applies because its "Finding, as asserted in its Motion to Intervene, that [Chad] is a member or eligible for membership with the Oglala Sioux Tribe was binding upon the Court below."

[¶ 17] There are two problems with the Tribe's argument. First, the Tribe in its motion to intervene and its motion to transfer jurisdiction alleged that Chad was an Indian child because he was under eighteen years of age and was eligible for enrollment in the Tribe. However, in order to establish that Chad is an Indian child under 25 U.S.C. § 1903(4)(b), the relevant statute in this case, the Tribe must establish both that Chad is eligible for membership in the Tribe and that he is the biological child of a member of the Tribe. The Tribe's motions did not allege that Mary is a member of the Tribe. Alleging that Chad is eligible for membership addresses only half of the equation and is not conclusive of the determination whether he is an Indian child, triggering application of ICWA.

[¶ 18] More importantly, however, the Tribe's argument is premised upon a misconception of the procedure and burden of proof employed in determining whether ICWA applies. The Tribe's underlying assertion is correct. An Indian tribe's determinations of its own membership and eligibility for membership are binding and conclusive in an ICWA pro-

ceeding. *E.g., In re Junious M.,* 144 Cal. App.3d 786, 193 Cal.Rptr. 40, 44 (1983); *In re S.N.R.,* 617 N.W.2d 77, 84 (Minn.Ct. App.2000); *In re Phillip A.C.,* 122 Nev. 1284, 149 P.3d 51, 56 (2006); *In re A.L.W.,* 108 Wash.App. 664, 32 P.3d 297, 301 (2001); 41 Am.Jur.2d *Indians; Native Americans* § 119 (2005); 42 C.J.S. *Indians* § 156 (2007); *see also Roe v. Doe,* 2002 ND 136, ¶ 8, 649 N.W.2d 566 ("an Indian tribe has exclusive jurisdiction over wholly internal tribal subject matter, such as membership disputes"). The rule is premised upon a tribe's inherent power to define and determine its own membership, which is central to its existence as an independent political community. *Montana v. United States,* 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Therefore, in determining whether ICWA applies, state courts "may not second-guess the internal decision-making processes of the tribe in regard to its membership determination." *Phillip A.C.,* at 56.

■ [¶ 19] Although the Tribe is correct that it has the right to conclusively determine its own membership, the Tribe makes an unsubstantiated leap in logic by alleging that the assertion in its motion to intervene that Chad is eligible for membership is conclusive of his Indian child status and mandates application of ICWA in this case. While the Tribe has the authority to determine its own membership, it is for the state court to correlate that information to the statute, apply the law, and make the legal determination whether the child is an Indian child under 25 U.S.C. § 1903(4), thereby triggering application of ICWA. Thus, the court must initially determine whether a tribe has concluded that the child or parent is a member or is eligible for membership in the tribe, and that determination by the trial court is a finding of fact. *S.N.R.,* 617 N.W.2d at 84; *Phillip A.C.,* 149 P.3d at 56; *A.L.W.,* 32 P.3d at 301. In resolving this factual issue, the court must determine whether the party who states that the child or parent is a member or is eligible for membership in the tribe is authorized to make such statements on the tribe's behalf. *S.N.R.,* at 84; *Phillip A.C.,* at 56; *A.L.W.,* at 301. The burden of proof is upon the party asserting the applicability of ICWA to produce evidence for the court to decide whether a child is an Indian child. *In re A.L.,* 2001 ND 59, ¶ 10, 623 N.W.2d 418; *In re H.D.,* 343 Ill.App.3d 483, 278 Ill.Dec. 194, 797 N.E.2d 1112, 1117–18 (2003); *In re J.D.B.,* 584 N.W.2d 577, 582 (Iowa Ct.App.1998); *In re J.L.M.,* 234 Neb. 381, 451 N.W.2d 377, 387 (1990); *Anderson,* 31 P.3d at 512; *In re A.S.,* 2000 SD 94, ¶ 13, 614 N.W.2d 383; 42 C.J.S. *Indians* § 156 (2007).

■ [¶ 20] The question here is not whether the Tribe has the authority to determine its own membership. It clearly does. The question here is whether any admissible evidence of such a determination by the Tribe was presented to the district court. The Tribe and Mary, as the parties urging ICWA's application in this case, had the burden to present evidence that Chad was eligible for membership in the Tribe and that Mary was a member of the Tribe. Allegations in pleadings, motions, or briefs are not evidence. *See Medd v. Fonder,* 543 N.W.2d 483, 486–87 (N.D.1996); *First Nat'l Bank of Hettinger v. Clark,* 332 N.W.2d 264, 268 (N.D.1983). Furthermore, there was no evidence that the person who signed the written motions, identified as a social worker, had the authority to make statements on tribal membership on the Tribe's behalf. Accordingly, the allegations in the Tribe's motions were not evidence, and were not

binding and conclusive on Chad's status as an Indian child under 25 U.S.C. § 1903(4) and on applicability of ICWA to this case.

## V

[¶ 21] The Tribe and Mary contend that, even if the allegations in the Tribe's motions do not conclusively establish that Chad is an Indian child and that ICWA applies, other evidence presented to the court establishes that Mary was a member of the Tribe and that Chad was therefore an Indian child under 25 U.S.C. § 1903(4)(b).

## A

[¶ 22] Much of the parties' arguments on this issue center upon Mary's enrollment status with the Tribe. Mary has twice applied for enrollment in the Tribe. Mary testified that her father applied to enroll her in the Tribe when she was seven years old, but her parents were told Mary would have to apply for membership on her own when she was an adult. In August 2004, after Karen filed her petitions to adopt Chad and to terminate Mary's parental rights, Mary filed an application for enrollment in the Tribe. At the time of the evidentiary hearing on March 20, 2007, the Tribe had not acted and Mary's application was still pending.

[¶ 23] Karen has argued throughout these proceedings that Mary is not a member of the Tribe because she has not been accepted for enrollment. As the Tribe correctly points out, however, membership in an Indian tribe is not synonymous with enrollment as a member of the tribe. For purposes of application of ICWA, a party may be a member of a tribe without being enrolled in the tribe. *See, e.g., In re Jeffrey A.,* 103 Cal.App.4th 1103, 127 Cal.Rptr.2d 314, 317 (2002); *In re Hunter,* 132 Or.App. 361, 888 P.2d 124, 125 (1995); *In re Arianna,* 2003 WI 11,

¶ 17, 259 Wis.2d 563, 657 N.W.2d 363; 41 Am.Jur.2d *Indians; Native Americans* § 134 (2005). As the court noted in *In re Junious M.,* 144 Cal.App.3d 786, 193 Cal. Rptr. 40, 45 (1983) (quoting Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,586 (Nov. 26, 1979)):

> Enrollment is not always required in order to be a member of a tribe. Some tribes do not have written rolls. Others have rolls that list only persons that were members as of a certain date. Enrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative.

Mary's lack of enrollment in the Tribe is not dispositive of the issue of whether she is a member of the Tribe.

## B

[¶ 24] The remaining dispositive issue is whether Mary or the Tribe presented any evidence from which the district court could find that Mary was a member of the Tribe other than by enrollment.

[¶ 25] Mary and the Tribe argue that evidence of Mary's Indian heritage, her receipt of benefits provided only to Indians, her acceptance in the Indian community, and her application for enrollment with the Tribe all constitute evidence that Mary is a member of the Tribe. While these factors may support an inference that Mary is ethnically an Indian, they do not demonstrate membership in the Tribe. The definition of "Indian child" in 25 U.S.C. § 1903(4) requires more than a showing that the child and parent have an Indian heritage. The statute expressly requires either that the child be a member of a federally recognized tribe, or that the child be eligible for membership and the parent be a member of such a tribe. An

assertion that a child or parent "is of Indian 'heritage' or 'blood' provides no evidence that any of the children are Indian children under the ICWA." *In re R.M.W.,* 188 S.W.3d 831, 833 (Tex.App.2006).

[¶ 26] ICWA's requirement of current tribal membership of at least one party to the proceedings is an outgrowth of the limits on Congressional authority in Indian legislation. Congressional authority to legislate extends only to tribal Indians, and creates a political, rather than a racial, preference. *Rice v. Cayetano,* 528 U.S. 495, 519–20, 120 S.Ct. 1044, 145 L.Ed.2d 1007 (2000); *United States v. Antelope,* 430 U.S. 641, 645, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977); *Morton v. Mancari,* 417 U.S. 535, 553 n. 24, 554, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *see In re A.W.,* 741 N.W.2d 793, 809 (Iowa 2007). Such preferences are granted to Indians "not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities." *Rice,* at 520, 120 S.Ct. 1044; *Antelope,* at 645, 97 S.Ct. 1395; *Morton,* at 554, 94 S.Ct. 2474. In *In re A.B.,* 2003 ND 98, ¶ 36, 663 N.W.2d 625, this Court recognized that ICWA is not premised upon racial classifications, concluding that "[t]he different treatment of Indians and non-Indians under ICWA is based on the political status of the parents and children and the quasi-sovereign nature of the tribe."

[¶ 27] The Iowa Supreme Court addressed this distinction between ethnic Indians and tribal Indians in the context of ICWA in *In re A.W.,* 741 N.W.2d at 806–13. Noting that the traditional constitutional basis for federal Indian legislation is advancement of tribal self-government, the court concluded ICWA's focus is necessarily limited to tribal membership, not the ethnic background of an individual, and any attempt to expand ICWA's definition of "Indian child" to include ethnic Indians not eligible for membership in a federally recognized tribe would constitute an improper racial classification. *Id.* at 810. Viewed in this context, the evidence presented by Mary establishing her Indian heritage, Indian blood quantum, acceptance in the Indian community, and receipt of Indian scholarships, awards, and benefits, but without a corresponding connection to tribal membership, was irrelevant to the determination whether Chad is a biological child of a member of an Indian tribe and thus an Indian child under 25 U.S.C. § 1903(4)(b).

[¶ 28] Similarly, evidence that Mary had applied for enrollment with the Tribe is irrelevant to the determination of Indian child status. Subsection (b) of 25 U.S.C. § 1903(4) clearly requires proof that a biological parent is currently a member of the tribe, not that she is eligible for membership or has applied for membership. If anything, the fact that the Tribe had not yet approved Mary's application, which had been pending for more than two-and-one-half years at the time of the hearing on March 20, 2007, may call into question her eligibility for membership in the Tribe.

[¶ 29] Mary and the Tribe contend Mary did present evidence of her membership in the Tribe in the form of a document from the Department of the Interior dated October 27, 1980, which certified that Mary was at that time "listed on the Pine Ridge Indian Reservation Census Ledger ... as being 1/2 degree Oglala Sioux Indian blood, with Roll No. Pending." This document does not purport to be an official declaration that she is a member of the Tribe, but certifies only that she has a one-half degree blood quantum. Absent some other evidence showing that being listed on the Census Ledger is an official designation of membership in the Tribe, this document, standing alone, is not sufficient to satisfy the burden of dem-

onstrating that Mary is currently a member of the Tribe.

[¶ 30] It is apparent from the record that the district court carefully considered, but struggled with, this issue. At the March 20, 2007, hearing on the petitions for termination of parental rights and adoption, Karen again challenged the applicability of ICWA in this case, reasserting her argument that there was no evidence Mary was a member of the Tribe. In response, the court acknowledged the lack of evidence of Mary's membership but suggested ICWA would apply because Mary had done all she could to be recognized as a member:

> I understand your position, Mr. Sanderson and I understand that technically I have nothing in front of me that says she is a member but I have evidence in the record that says she has done absolutely everything she can to be a member and she qualifies as a member and the fact that it's not been recognized in the last 27 years is beyond her control.
>
> I may be wrong and I may be overturned but I am going to hold that I.C.W.A. applies.

At the conclusion of the hearing, the court again addressed ICWA's applicability:

> While technically [the Tribe is] not acting to accept her, it recognized her on the census. It recognized her by providing her benefits that are available only to Native Americans.
>
> I maybe [sic] wrong but in my heart I believe she is Native American. She should be given the benefit of the Native American Indian Child Welfare Act. That's my ruling.

[¶ 31] The court's rulings indicate a misunderstanding of the showing required to establish that a child is an Indian child under 25 U.S.C. § 1903(4)(b). It is not enough that a party show she has attempted to become a member and that the Tribe's failure to recognize her as a member is "beyond her control." Nor is it enough that the court believes the mother is Native American. Under 25 U.S.C. § 1903(4)(b), the question is not whether she is Native American but whether she is currently a member of a federally recognized Indian tribe. The court failed to recognize ICWA's distinction between ethnic Indians and tribal Indians. Furthermore, the court's statements that there was evidence she qualified as a member and the Tribe had provided benefits to her are not supported by evidence in the record. There was no evidence before the court of the Tribe's regulations or provisions on eligibility for membership, and there was no evidence that the benefits Mary had received as a Native American had been provided by the Tribe.

[¶ 32] The court's misinterpretation of the requirements of ICWA carried over into its findings of fact. In order to conclude that Chad was an Indian child under 25 U.S.C. § 1903(4)(b), triggering application of ICWA, Mary and the Tribe were required to prove, and the court was required to find, that Chad was eligible for membership in the Tribe and that Mary was a current member of the Tribe. The court made neither finding. The court's relevant findings state only:

14.

[Mary] is listed on the Pine Ridge Indian Reservation Census Leger [sic] as being 1/2 degree Oglala Sioux Indian Blood.

15.

[Mary's] enrollment is pending with the Oglala Sioux Tribe.

16.

[Chad] is 1/4 Oglala Sioux Indian Blood.

These findings by the district court do not support its conclusion of law that ICWA was applicable in these proceedings.

■■■ [¶ 33] Proof of Indian child status in cases such as this should not be particularly difficult. Because the Tribe's determination that a person is a member or is eligible for membership is conclusive and binding, all that is necessary under 25 U.S.C. § 1903(4) is admissible evidence that the Tribe has determined either that the child is a member, or that the child is eligible for membership and a biological parent is a member. An affidavit or testimony of a tribal representative, providing the relevant facts on the parties' membership status and establishing the authority of the person making the statement to speak on behalf of the tribe, would be sufficient. *See, e.g., In re A.L.,* 2001 ND 59, ¶ 10, 623 N.W.2d 418; *In re A.G.-G.,* 899 P.2d 319, 321–22 (Colo.Ct.App.1995); *In re J.L.M.,* 234 Neb. 381, 451 N.W.2d 377, 387 (1990); *In re Phillip A.C.,* 122 Nev. 1284, 149 P.3d 51, 56 (2006); *In re Angus,* 60 Or.App. 546, 655 P.2d 208, 212 (1982). No such affidavit or testimony was presented by Mary or the Tribe in this case.

### C

[¶ 34] We conclude Mary and the Tribe failed to satisfy their burden of producing evidence establishing that Mary was a member of the Tribe as required under 25 U.S.C. § 1903(4)(b). Therefore, the district court erred in concluding that ICWA applied in this case. Because we conclude there was insufficient evidence presented to establish that Mary was a member of the Tribe, we need not address whether Mary and the Tribe met their burden to produce evidence that Chad was eligible for membership in the Tribe.

### VI

[¶ 35] We have considered the remaining issues and arguments raised by the parties and find them to be either without merit or unnecessary to our decision. We reverse the judgment dismissing the petition for termination of Mary's parental rights and remand for further proceedings consistent with this opinion.

[¶ 36] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 37] In ¶ 23, the majority asserts: "As the Tribe correctly points out, however, membership in an Indian tribe is not synonymous with enrollment as a member of the tribe."

[¶ 38] The authority cited by the majority actually reflects that "membership in an Indian tribe is not *always* synonymous with enrollment as a member of the tribe." *See, e.g., In re Arianna,* 2003 WI 11, ¶ 17, 259 Wis.2d 563, 657 N.W.2d 363 ("[M]any tribes require a person to register or enroll in order to be considered a member of the tribe, but some do not and automatically include a person as a member if the person is descended from a tribal member who was listed on the tribal rolls as of a specific date.").

[¶ 39] The majority then arrives at a logical fallacy:

- Enrollment is not determinative of membership in some Indian tribes.

- The Oglala Sioux Tribe is an Indian tribe.

- Enrollment is not determinative of membership in the Oglala Sioux Tribe.

[¶ 40]   Because this fallacious reasoning is in the nature of dicta, unnecessary to deciding the case, I concur in the result.

[¶ 41]   Dale V. Sandstrom.