IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHELLE M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, H.N., *Appellees*.

No. 1 CA-JV 17-0019
FILED 8-31-2017

Appeal from the Superior Court in Maricopa County
No. JD527671
The Honorable James T. Blomo, Judge

**APPEAL STAYED; JURISDICTION REVESTED IN SUPERIOR COURT**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

**OPINION**

Chief Judge Samuel A. Thumma delivered the Opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge James P. Beene joined.

**T H U M M A**, Judge:

¶1        Michelle M. (Mother) appeals from an order terminating her parental rights to her biological daughter H.N. On appeal, Mother argues the superior court erred in finding that termination was in H.N.'s best interests and that the Department of Child Safety (DCS) did not comply with the notice requirements of the Indian Child Welfare Act (ICWA). *See* 25 U.S.C. § 1912(a) (2017).[1] Although the best interests finding was proper, the appeal is stayed for 90 days and jurisdiction is revested in the superior court to allow for proper notice under ICWA and any appropriate proceedings as a result of that notice.

## FACTS[2] AND PROCEDURAL HISTORY

¶2        H.N. was born in October 2015 substance-exposed to opiates and was hospitalized for more than a month. DCS filed a dependency petition, claiming H.N. is an Indian child based on her alleged father's self-report that he was registered with the Navajo Nation. DCS provided proper notice under ICWA to the Navajo Nation. Father, however, did not establish paternity and the Navajo Nation did not appear in the proceeding.

¶3        At an April 2016 hearing, DCS argued ICWA did not apply, noting father had refused to participate in paternity testing. Because paternity had "not been established and therefore an ICWA finding cannot be made," the superior court found H.N. was "not eligible for enrollment in the Navajo Nation," meaning ICWA did not apply. The court then found H.N. dependent as to Mother, who had failed to attend the hearing, and adopted a case plan of family reunification.

¶4        In June 2016, the court changed the case plan to severance and adoption. DCS' motion to terminate alleged, as to Mother, substance abuse and six-months time-in-care and that severance would be in H.N.'s best interests. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3) & (B)(8)(b). After a severance adjudication in December 2016, the court granted the motion to terminate, finding DCS proved by clear and convincing evidence both

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[2] This court views the evidence in the light most favorable to affirming the juvenile court's order. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95 ¶ 10 (App. 2009).

statutory grounds and proved by a preponderance of the evidence that termination would be in H.N.'s best interests. This court has jurisdiction over Mother's timely appeal from that order pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A) and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

### I. Mother Has Shown No Error In The Superior Court's Best Interests Finding.

¶5 In a case not governed by ICWA, to terminate parental rights, the superior court must find by clear and convincing evidence that at least one statutory ground listed in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

¶6 Mother does not challenge the finding that DCS proved both statutory grounds for severance, meaning those issues are waived. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577-78 ¶ 5 (App. 2017). Mother does argue the superior court erred in finding termination was in H.N.'s best interests because Mother and H.N. have a relationship that should be allowed to continue. To support a best interests finding, "the court must find either that the child will benefit from the termination of the relationship or that the child would be harmed by continuation of the parental relationship." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288 ¶ 26 (App. 2011) (citation omitted).

¶7 The superior court properly found that "[t]he evidence is clear that [H.N.] would be endangered by Mother" unless severance was granted, given Mother's "long history of drug abuse and mental health issues." The court also found Mother refused to participate in services and, instead, "has chosen to continue to abuse drugs rather than take the necessary steps to allow her to care for" H.N. The record amply supports these findings.

¶8        Mother, who has been incarcerated during some of the relevant time, testified she is making some effort to address her substance abuse issues. It is unclear, however, how long it would take for her to resolve those issues and whether she could maintain sobriety when not in custody. Moreover, the court properly could conclude that affording Mother an indeterminate amount of additional time to address her substance abuse issues was not in H.N.'s best interests. *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). On this record, the superior court properly found severance was in H.N.'s best interest.

## II.        Mother's Testimony Regarding Eligibility For Enrollment In A Native American Tribe Requires Remand.

¶9        During her direct examination at trial, Mother testified as follows:

> Q. You advised me earlier that you are affiliated
> with the Sioux tribe; is that correct?
> A. Yes.
> Q. And tell us, if you will, what your affiliation
> is?
> A. My mom is Oglala, enrolled in the Oglala
> Sioux tribe in South Dakota, and my dad is an
> enrolled member in Spirit Lake in North
> Dakota.
> Q. Okay. And are you an enrolled member?
> A. Not yet, but I can be.
> Q. You're eligible for enrollment?
> A. Yes.
> Q. Do you know whether your daughter
> would be eligible [for] enrollment?
> A. Yes, she would.

DCS did not cross-examine Mother about this testimony. During closing arguments, Mother's counsel noted Mother "did have a tribal affiliation that" DCS "has never looked into," adding that "under ICWA, the considerations are somewhat different than in other cases." In rebuttal, DCS argued Mother testified "that she's not eligible, so this case is not an" ICWA case, incorrectly characterizing Mother's testimony. The order granting the motion to terminate tacitly finds this case is not governed by ICWA. Given her trial testimony, Mother claims the court erred in failing to comply with ICWA notice requirements.

4

¶10      Although providing the starting point, ICWA's text does not provide an easy answer. ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); *accord* Ariz. R.P. Juv. Ct. 37(C)(2). ICWA requires that, "[i]n any involuntary proceeding in a State court, where the court knows *or has reason to know* that an Indian child is involved, the party seeking . . . termination of parental rights" must provide notice to the relevant tribe "of the pending proceedings and of [the] right of intervention." 25 U.S.C. § 1912(a) (emphasis added).

¶11      Upon receipt of such notice, if the tribe determines that an Indian child is involved, ICWA grants the tribe various rights, including the right to intervene in the state court proceeding and to seek to transfer proceedings to the relevant tribal court. 25 U.S.C. § 1911(b) & (c). When ICWA applies, it also imposes additional requirements for termination of parental rights not otherwise required by Arizona law and not addressed in the order granting the motion to terminate in this case. *See* 25 U.S.C. § 1912(f); *see also Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331 (2009) (discussing interrelationship between ICWA and Arizona law for termination of parental rights).

¶12      DCS does not argue that Mother's testimony was insufficient to provide notice that H.N. might be an Indian child under ICWA. Instead, DCS argues that, "by the time Mother testified about her tribal affiliation, there were no [pending] proceedings for the tribe to intervene in." That argument, however, ignores the fact that Mother's testimony occurred before the motion to terminate was granted. Accordingly, DCS' argument regarding the application of ICWA to "post-termination proceedings" is inapplicable. *Cf. Gila River Indian Cmty. v. Dep't Child Safety*, 242 Ariz. 277 (2017) (discussing transfer of matters under ICWA both pre- and post-termination).

¶13      DCS' argument also does not address case law from other jurisdictions directing that "[n]otice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered" and that the notice requirement in ICWA cannot be waived by a parent. *See In re Suzanna L.*, 127 Cal. Rptr. 2d 860, 866 (App. 2002) (quoting *In re Kahlen W.*, 285 Cal. Rptr. 507, 513 (App. 1991)); *accord Gila River Indian Cmty.*, 242 Ariz. at 292 ¶ 27 (noting "courts have historically been reluctant to imply a waiver of Indian rights under ICWA").

¶14　　As noted in Arizona and elsewhere, for ICWA to apply, "[e]nrollment is not a necessary condition of tribal membership, although membership may be established through proof of enrollment. Each tribe, however, determines its membership, and its determination that a person is a member of the tribe is conclusive." *Jared P. v. Glade T.*, 221 Ariz. 21, 24-25 ¶ 18 (App. 2009) (citing cases); *accord In re M.C.P.*, 571 A.2d 627, 634 (Vt. 1989) (citing cases); *In re Dependency of Colnar*, 757 P.2d 534, 535 (Wash. App. 1988). For decades, courts have recognized that it is preferable to "err on the side of giving notice and examining thoroughly whether a juvenile is an Indian child." *M.C.P.*, 571 A.2d at 635; *accord In re Morris*, 815 N.W.2d 62, 76 (Mich. 2012) (requiring notice to tribe where parents informed court they had Indian heritage); *In re M.R.P.-C.*, 794 N.W.2d 373, 378 (Minn. App. 2011) (addressing obligation to inquire when information is provided to court about possible Indian heritage) (citing cases).[3] In short, given Mother's testimony, DCS was required to provide proper notice under ICWA. It is undisputed, however, that no such notice was provided in response to Mother's testimony.

¶15　　Mother argues that DCS' failure to provide ICWA notice requires reversal of the order terminating her parental rights. Not so. There are at least three possible outcomes in response to a proper notice under ICWA: (1) the Tribe responds that it has determined H.N. is an Indian child, meaning ICWA applies; (2) the Tribe responds that it has determined H.N. is not an Indian child, meaning ICWA does not apply; or (3) the Tribe does not respond, meaning there is no evidence that H.N. is an Indian child and, accordingly, ICWA would not apply. And even if ICWA applies, the Tribe may or may not intervene or take other action allowed by ICWA.

¶16　　Because providing notice under ICWA given Mother's testimony must occur before the merits of the termination order may be finally resolved on appeal, the appeal is stayed for 90 days. During that time, jurisdiction is revested in the superior court to allow for proper notice under ICWA and, depending upon the outcome of that notice, any appropriate further proceedings. *Accord In re Junious M.*, 193 Cal. Rptr. 40, 47 (App. 1983); *Colnar*, 757 P.2d at 536-37; *M.C.P.*, 571 A.2d at 635; *see also*

---

[3] Cases DCS cites in arguing to the contrary are distinguishable on their facts. *See Ariz. Dep't of Econ. Sec. v. Bernini*, 202 Ariz. 562, 564 ¶ 10 (App. 2002) (addressing ICWA where DCS' predecessor "concedes that the notice provision of § 1912(a) had been invoked"); *Maricopa Cty. Juv. Action No. A-25525*, 136 Ariz. 528, 533 (App. 1983) ("We think Congress has . . . evidenced its intent not to extend the ICWA to a child whose mother is non-Indian and whose father has failed to come forward and lay legal claim to the child.").

*Suzanna L.*, 127 Cal. Rptr. 2d at 870 (noncompliance with ICWA notice "does not mean the trial court must go back to square one").

**¶17** If, after proper notice under ICWA, the Tribe responds that H.N. is an Indian child, further proceedings consistent with ICWA will be necessary. If, however, the Tribe responds that H.N. is not an Indian child or does not respond, no further proceedings under ICWA will be required. Within five days of the superior court's entry of a decision resolving the application of ICWA after proper notice, Mother's counsel shall provide notice of that decision to this court, with a copy to DCS' counsel.

## CONCLUSION

**¶18** The appeal is stayed for 90 days and jurisdiction is revested in the superior court to allow for proper notice under ICWA and any appropriate proceedings as a result of that notice.

